May it please the Court, Jamal Kersey on behalf of Petitioner Hector Aguiluz-Pineda. There are three issues that I'd like to address before this Court. Two are jurisdictional issues and the last regarding the particularly serious crime issue. The first is that Petitioner's challenge to the finding that this was not a particularly serious crime and should not be precluded for failure to exhaust his remedies in front of the Board of Immigration Appeals because exhaustion is not required when we're discussing a fundamental substantive constitutional violation. The second issue is that this Court does have jurisdiction to hear this matter under INA 242 A2D as a question of law and a constitutional claim. And the last issue is that the Court should adopt the Seventh Circuit position as set forth in Bosetti v. Mukasey and find that the immigration judge should conduct a factual inquiry to determine whether or not a drug trafficking aggravated felony is necessarily a particularly serious crime. So addressing the ---- I don't think I understand the first point you made. What's the fundamental constitutional issue here that you say we automatically have jurisdiction over? Well, our argument is that this is an issue of due process, and that is adopted from ---- Well, you can call anything due process, but what's the specific issue here? Right. The specific issue seems to do with a pretty specific statutory interpretation question. What's a particularly serious crime? That's correct. And so on the ---- That's the kind of question that the BIA ---- There are some questions the BIA can't pass on. The agency cannot pass on ineffective assistance of counsel-type claim. Well, actually, it can, because it's a statutory variant of that. But this is the kind of question that the agency would pass on all the time. It determines whether or not, in its view, applying the immigration statute, something is a particularly serious crime. Now, it may not have the last word, but it's not the kind of issue there's no point in bringing up to the BIA, because the BIA can't speak to it. I'm not sure how it is that we have jurisdiction if, in fact, it was a subject that had to be brought to the BIA, and it never was. The BIA says in so many words that the petitioner, the party that we call the petitioner, didn't bring the subject up. This is correct. And the facts are strikingly similar to the case I am pleading for this Court to adopt as precedent or basically follow in Bosetti. Like Bosetti, Mr. Aguiluz was unrepresented by counsel and filed his BIA appeal pro se. And so an argument to this level of sophistication, so to speak, would not be something that a pro se petitioner would tend to raise and something that, again, going back to the rationale for the criteria set forth in matter of Y.L., matter of Y.L., the attorney general states that aliens are deserving of due process, and this does extend to removal proceedings and follows that this encompasses the right to be heard. And so when you're talking about the context of a person who's seeking asylum, withholding of removal, essentially requesting protection from the government, stating that if they return to their home country, this could be a matter of life and death, then it does follow that, yes, particular, excuse me, aggravated felony drug trafficking crimes are presumptively particularly serious crimes. But there are a small, a very small, subsection of exceptional cases in which a drug trafficking crime that is an aggravated felony would not necessarily be a particularly serious crime. With reference to the judge's question, what is it that, notwithstanding that he was pro se, that the petitioner did in this case to preserve his argument that the I.J. had made a mistake in making a determination or in the methodology that he used in making his determination on the serious crime question? He only stated that the judge made an error in her factual determinations. So this issue was not raised before. He didn't say that? Well, he said he had possession of the drugs, but he wasn't trafficking drugs. Well, when he, and this was something that he had indicated before the immigration judge as well, he made excuses basically stating that he wasn't selling them. He wasn't getting money for it. His friend was going to give him $20, and they were going to split the drugs, and that he had pled basically without entering a People v. West plea. That's essentially what he did. I understand that based on the facts of this case, a jury could find me guilty beyond a reasonable doubt, but in order to avoid a potentially lengthier prison sentence, I will plead and take advantage of the deal in this case. And these are actually factual inquiries that are permitted when analyzing a particularly serious crime, and rightfully so because, again, what we're looking at as far as what respondents in removal proceedings are requesting from the government, essentially pleading for protection on the basis that they could be potentially harmed, tortured, or killed. And that was the case in Mr. Aggie Luce's case. The immigration judge did find that based on his testimony that he had been kidnapped, that he had been assaulted with a rifle, and that his leg had been twisted, and he had been buried and witnessed killings, that that would undoubtedly be persecution if accepted as true. And that, this whole issue regarding whether it was a particularly serious crime changes the whole analysis. Ginsburg. I think what you're trying to argue, at least, and maybe I'm wrong, but your legal argument is that one of the things that the judge is supposed to consider in the particularly serious crime evaluation is whether he was acting, his involvement was merely peripheral. And by raising the fact that he just possessed the drugs and was not trafficking in the drugs, that he was trying to show that he, his involvement was merely peripheral. And then your further legal argument is that in any event that I.J. actually applied the wrong legal standard and the BIA affirmed that. That is correct. Without going into all that analysis. Well, that is correct. And it's not just that his involvement was only peripheral. There's the six criteria which, in matter of Y.L., indicates that's a minimum. So, again, this is going to be a very small number of cases that are aggravated crimes that will fit under this exception to rebut the presumption that it is a particularly serious crime. And so based on the court's position in Bosetti, the Seventh Circuit's position, this was, and I would concede that, the conduct by the immigration judge in Mr. Aguiluz's removal proceedings was nowhere near as egregious as the conduct by the immigration judge in Bosetti's. The immigration judge in that case had basically indicated that because he had bribed an officer in Nigeria, then he could just do that again to escape being imprisoned, and it looked like he just took a very cavalier attitude towards conducting this inquiry. He did have counsel before the I.J., is that correct? He did, yes. And would you describe to me what, how the, when he did have counsel, what was counsel's argument, if any, with respect to the fact that this was not a serious crime under, if you consider these factors, these six factors and other factors, that would show that this was an extraordinary circumstance and that the presumption of it being serious should be overcome. Was that developed before the I.J.? No, Your Honor. So it wasn't developed before the I.J.? No. And then on pro se, he said, well, I didn't get any money for it. This is correct, Your Honor. I don't believe that his counsel elicited very much testimony at all with respect to these factors, whether he was even familiar with. Did he even make a suggestion to the I.J. that the presumption shouldn't apply because it wasn't a serious offense? I don't believe so, Your Honor. So it was, there was nothing before the I.J. that raised into question whether the presumption should be rebutted. And then when it goes to the BIA, we have one single statement was that I didn't get any money for it, and somehow or other the I.J. committed an error of law or abused his discretion in not addressing something that wasn't brought to his attention and wasn't claimed to be an exception to the rule. Well, the immigration judge did address the issue, but I believe that she... But he didn't go through the factors. She did not. No one asked him to go through the factors. No one said this is an exception. No one said this is not a serious crime. And then when no one complains about that and he doesn't do anything about it, then he abused his discretion by not going through that. Is that what you're saying? So we would establish that even if you didn't bring it to the I.J.'s attention, even if you didn't complain about it, that as a matter of law, the I.J. has to make this determination even though it's not put into question. Yes, Your Honor. That would be my position. And I believe that Bosetti speaks to that same issue, that because of the importance of these remedies, this is, in fact, why there's a distinction between the particularly serious crime and the aggravated felony. So as to not hamstring, so to speak... It's not just the establishment of the criteria by which you can overcome the presumption that there should be a definite duty on the I.J. and then the BIA, if it's raised, to make these considerations to positively show that the presumption doesn't exist in this case. Correct, Your Honor. I believe that this is what Bosetti says and, again, rightfully so, given it's not like this is going to open up a whole slew of cases in which people will be able to assert that they weren't convicted of particularly serious crimes because, again, looking at the criteria, which establishes just at a minimum a threshold for being able to then determine that it's not a particularly serious crime, given the serious nature of drug trafficking offenses, as stated in matter of Y.L., drug trafficking offenses should be treated extremely harshly under the law, and it is, and this is why a person being convicted of an aggravated felony is precluded from asserting almost all forms of relief under the Immigration and Nationality Act, save the, you know, deferral of removal. That's about the only thing that a person could be eligible for, and that's what, that was the only application that was in in front of the immigration judge. And so the whole argument by the government that he was not able to establish that he was more likely than not that he would be tortured, either at the hands of or at the acquiescence of the government, I don't even think we should be addressing that now because I do believe that had the immigration judge conducted this factual inquiry, it is a strong possibility that she would have been able to find. Ginsburg, I don't understand this whole discussion that's going on, because there's three pages of testimony before the I.J. about what exactly happened with regard to the drugs. His denial, he says, I wasn't selling, goes on and on and on. The NYG plead guilty, on and on and on. Plus the I.J. has about two pages in her decision about she heard his testimony, she understands, this is her analysis, understanding that it's the wrong law she's applying, but she goes on for two pages about how she heard his testimony, he says he wasn't selling, but she has a hard time reconciling that with the fact that he did plead to that and she doesn't know what to make of the fact that he said he only pled because they were offering him this deal. So it's all brought up and discussed and discussed in the I.J.'s decision. So I don't understand why we're saying that, you know, when it's never argued and it's never discussed, the I.J. has a duty to do something about it. Your Honor, I only have 24 seconds. If I may answer your question. Okay. You may. Okay. So I believe the fundamental point is what Your Honor stated, that the immigration judge applied the wrong law. She did conduct an inquiry, as immigration judges tend to do, they will answer they will ask questions if they have Was he answering all those questions, were they posed by his lawyer or by the I.J.? The immigration judge did conduct an inquiry as far as his involvement in this drug transaction, but it's clear that she was not following this criteria because she didn't go into whether this involved organized crime, whether there was any harmful or adverse effect to juveniles. She didn't ask any of these things as far as the amount of money that was to be received. There was a discussion where he said he was going to get $20 from him. That's in the transcript. Well, that is true, Your Honor. But as far as meeting all six of the criteria, that did not happen. He didn't apply all those criteria, you're saying. That's correct. And so the point being that What was the evidence from which he was supposed to consider this stuff? What evidence was before him that it didn't affect juveniles and all these other factors? Well, that was not presented to the court. But the position that we're taking is that the immigration judge should have a sort of authority to inquire and fulfill basically their satisfaction of whether this is actually a particularly serious crime or simply an aggravated felony, and therefore whether they're eligible for withholding asylum and withholding under the Convention Against Torture. So this didn't happen. So I guess, and maybe you're correct. So the question, so the thing is, I.J. needs to make a determination as to whether the presumption applies even though no one argues to him that the presumption doesn't apply and no one presents any evidence of the factors that are relevant to whether or not the presumption should apply. Yes, Your Honor. That would be my position. Thank you.  Thank you. May it please the Court. I am Sarah Byram, appearing on behalf of the Attorney General. I wanted to discuss two things today, the particularly serious crime determination and the agency's denial of Petitioner's deferral of removal of removal. First, with respect to the particularly serious crime determination, we would hold that the Court lacks jurisdiction here. You would hold? We would. Who's we that's holding? The Attorney General. You would suggest, maybe? Yes, we would suggest. We argue that the Court lacks jurisdiction here because Petitioner did not raise any arguments to the Board on this point. Further, we would also suggest that here the I.J. did undertake the correct analysis. She considered the Francescu discretionary factors. She did consider his testimony. She looked at the nature of the underlying crime, his admissions, about exactly what he was doing with respect to the cocaine in that situation. Further, this Court in Anaya Ortiz found that the BIA's interpretation in matter of NAM was reasonable and that the judge can consider all relevant information when looking at whether or not a crime is particularly serious. And here the Court, the immigration judge, excuse me, did that. She considered his testimony. She considered the statute of conviction, the underlying offense. Now, Petitioner would argue that the immigration judge considered the incorrect factors and should have looked to matter of Y.L. We argue that matter of Y.L. does not apply here because this Court in Miguel Miguel held that matter of Y.L. cannot be applied retroactively prior to 2002 and Petitioner's crimes happened well before 2002. The crimes that the agency found to constitute a particularly serious crime happened in 1990. But when was his hearing? Excuse me? When was his hearing? When did the I.J. rule? The I.J. 2010, right? Yes. Right. And also, what the BIA in this case said we adopt, I think the language is we adopt and affirm that incites matter of verbatim. Verbatim. So what is the implication of that? The implication of that is when they cite verbatim that the court or, excuse me, that the board adopts and affirms the I.J. and we look to the I.J.'s decision when determining. And the I.J. fully addressed this issue, although the Petitioner says that she applied the wrong standard, but she did fully address it. Yes, that's correct. We believe that she did fully address it by looking at his admissions, his testimony, the underlying conviction. Why wouldn't we have jurisdiction over that? In this case, we would argue that because particularly serious crime determinations are discretionary, here Petitioner hasn't raised a legal challenge to that determination. His challenge is that she applied the wrong legal standard. That's, that is his. That's a legal question. You're arguing she applied, I think it's a she. I'm not sure. Jaja? She? Yes. And you're arguing that she applied the correct standard. That's correct. You're correct. That is a legal question. And so we hold that in this case that is a legal question. However, matter of Y.L. is inapplicable. And so their challenge isn't meritorious. Now, your rule under the case that you say that says Y.L. is not applicable? Yes. It's inapplicable why? Miguel, me. Is it retroactivity as it relates to the time of the conviction? Or is it retroactivity as it relates to the time that the I.J. and the BIA makes its determination? In Miguel, Miguel, it is my understanding that it's retroactivity as applied to the date of the conviction. In that case, similar to this one, he was convicted in the early 1990s. And at the time of his conviction, drug trafficking offenses were not presumptively serious. It was still considered case-by-case under Francescu. And here, similarly ---- Well, wouldn't that undercut your argument? At least since Y.L., you have a presumption that it's serious. But you're saying before that, there was not even a presumption that it was serious. That is ---- So how does that help you? It may not necessarily be most advantageous, but that's our understanding of the reading of the law at that time. And so here we ---- You wouldn't have that new standard that the I.J. abused or the BIA abused by not considering. Yes. And we do believe that she applied the Francescu factors correctly in holding that his conviction was particularly serious. I'm lost in your retroactivity argument. Because it seems to me that McGill was the mirror image in a very different situation. In this case, the petitioner is trying to argue for the benefit of Y.L. So I don't know why it matters that his crime took place or his conviction took place before. In McGill, the problem was that the government was trying to apply Y.L. to a conviction that took place before in a way that disadvantaged the petitioner. And that's where retroactivity is a problem. So if ---- I'm not persuaded by your citation of McGill. Is there anything else that I should be listening to to support that retroactivity argument, or should I go on to the more substantive question as to what happens when you ---- Should Y.L. be ---- should there be an affirmative burden on the I.J. to apply Y.L., which seems to be the main issue underlying all of this? We ---- we would hold that ---- we would argue that there should be an affirmative burden on the I.J. to apply a matter of Y.L. But in this case, because Y.L. wasn't in existence at the time. Well, it was. It was. Y.L. wasn't in existence at the time. The I.J. was doing her work. So there's no ---- so you acknowledge there should be that the I.J. is supposed to apply Y.L. and didn't here. Is that the end of the story? I would argue that under a matter of Y.L., because in the Ninth Circuit at the time, it was not held to be retroactive. The I.J. ---- Well, I just told you why I'm not buying that argument. Unless you give me a reason, you can try with my colleagues. But isn't it ---- isn't McGill the reverse situation? Yes. So why ---- I mean, I don't think there is such a rule that says Petitioner can't get the benefit of the Attorney General's decision, which came out years before the I.J. hearing here, just because the conviction took place before. There's no ex post facto type implication there. Petitioner is not disadvantaged. So if retroactivity doesn't stand in the way, and you tell me that Y.L. should have been applied by the I.J., and the I.J. didn't apply Y.L., what's left? Well, we do recognize the limitations of the agency's decision, particularly as he was criminal, detained, and pro se. So in the event that the court finds that the agency should have applied matter of Y.L., we would ask for a ventura remand to allow the agency to consider that in the first instance. Moving on, I'd just like to state briefly the ---- our argument that we do not find ---- Just so that I understand. I just ---- so Y.L. is the authority that applies to this question of what is a particularly serious offense, right? Under ---- That is the most recent decision by the agency setting forth the factors, yes. The agency said this is what the I.J.'s are supposed to apply. Yes. It would be like me having a case, and I ---- if you were listening to arguments earlier, and I say, well, I didn't like the role in Cabin Tax, so I'm just going to apply Vidal, because I think Vidal is a better role. I can't do that, right? That's correct. And there are limitations in the immigration judge's decision. So to the extent that she, for whatever reason, did not apply a matter of Y.L., of course, we have no idea why she didn't. But we do believe that, at least under Francescu and her analysis there, that was correct. Okay. Briefly, with respect to Petitioner's deferral of removal claim, we would find that the record does not compel reversal here. All of the Petitioner's future harm considerations undermine his claim. His claim is entirely speculative. He has not shown that there is any continued interest in him. His claim is over 30 years old. Was there an adverse credibility finding here? There was not. Okay. So then don't we deem the testimony as true? That is correct. Okay. And he testifies to his fear? He testifies to the events that happened to him and that he has this fear of returning to El Salvador. But we, even despite those fears, the agency found them to be speculative and unpersuasive. For a number of reasons. One was that he hadn't shown that the individuals that he fears, the FMLN members or their children, have any continued interest in him. He also can't identify his kidnappers by name. So there's no indication that if he would return to El Salvador now, that they would recognize him after 30 years, that he would recognize them. And because he can only identify them by their facial recognition, there's no way for him to identify these kidnappers, even if he assumes that that's who they might be. He has also remained unharmed after his kidnapping, and he voluntarily returned to El Salvador twice, which undermines his claim and was unharmed both occasions. And in addition, his family continues to remain unharmed in El Salvador. So that is another undermining factor, and which supports the agency's conclusion that he hasn't shown a clear probability of future torture if he returns. Just briefly, finally, he had also made a mention to gang violence as part of his deferral claim. And as this Court has long held, gang violence is insufficient for relief. If there are no further questions, I would sum up. Okay. Thank you. Simply put, Petitioner cannot prevail. He has waived every challenge to the agency's particularly serious crime determination, and he cannot show any eligibility for his remaining form of relief, deferral of removal. Accordingly, the record does not compel reversal of the agency's decision, and the Court should dismiss in part and deny in part the petition for review. Thank you, counsel. Your Honor, it actually appears that the government agrees with my position that the immigration judge should have applied the standard in Y.L., so I don't really have any argument against that. Let's assume that for the purposes of this question that the immigration judge should have done that. What evidence do you hope to present with reference to the factors that the immigration judge should have considered? Are you in favor of this not being presumptively a serious crime, in other words, that the exception should apply? The testimony I would seek to elicit had I been trial counsel would be that the amount of drugs was very small in quantity. The amount of money was $20 versus the thousands you may see on somebody who's a drug trafficker. I'd say that there were no weapons, so there was no gun allegations with respect to the conviction. There was no indication that there was any organized crime. There wasn't any type of Mexican mafia or cartel involved. There, again, no violence. Now, we're talking about the exception, right? Yes. The presumption is that it is. Yes. So you're saying the presumption applies. I thought it's the presumption applies unless you can show this. And you're saying the presumption applies unless the government also shows that the exceptions don't apply. Oh, no, no, no. I'm not saying that. I'm saying that, yes, a drug trafficking aggravated felony is presumptively a particularly serious crime unless, at a minimum, the respondent can show that these six criteria. And then even that is a discretionary decision. That's true. Even if you showed that four of the factors weighed this one particular way. Well, you'd have to show all six at least. Well, let's say you showed all six. Is the BI required once it makes that decision? And let's say it uses the right criteria, it uses the right formulation, and it says no, but I still don't feel that the exception isn't on a discretionary decision. Then once it uses the right formula? It could still find that it is a particularly serious crime, yes, Your Honor. But my point is that he should have been afforded that opportunity. And on that, I'd submit. All right. Thank you, counsel. Arbelez-Pineda is submitted.
judges: Benavides, WARDLAW, CLIFTON